(Decided July 15th, 1859.)

Mayor and City Council of Baltimore *vs.* Robert Brannan.—Robert Brannan *vs.* The Mayor and City Council of Baltimore.

The City of Baltimore by its charter has authority "to erect and regulate markets," and "to prevent and remove nuisances." Ordinances were

Mayor and C. C. of Balto. vs. Brannan.

passed to rebuild a market house, and erect a temporary one for the use of the public till the new one was completed. After the old building had been taken down, and the temporary one put up, a hole was dug within the limits of the market by persons who had no business there, into which the plaintiff fell during market hours and was injured. The hole was about twenty feet from a flat outside the old market house, but within the limits taken for the new one, where hucksters were accustomed to sell, and, at the time, were selling vegetables against the orders of the market-master, who had warned them off. The limits of the new market were indicated by a furrow, along which granite stones were placed for the work, which with timber placed at one end were intended as obstructions to keep people off. The plaintiff sued the city to recover damages for injuries sustained by falling into this hole. HELD:

1st. That the action would not be maintained on the ground of negligence in the city, or its agents, in removing the old house; the owner or person in charge of property undergoing repairs or being rebuilt, is not responsible for damages to one who *voluntarily* goes amidst the ruins *having no business there*.

2nd. The charter places the city, in this respect, on the same footing as individuals and private corporations, and it assumes the *duty*, and the consequence of negligence in its performance, of keeping the established markets free from nuisances.

3rd. But this liability cannot be enforced where the party injured has not observed ordinary care and diligence, nor where he met his accident at a place which, at the time, was not an authorised market place, or where buying and selling were carried on against public authority.

4th. When the old house was taken down it ceased to be a market place, and the fact that hucksters were selling on the flat as formerly, does not affect the question, because the plaintiff cannot protect himself against the consequences of his own act under cover of the unauthorised acts of others.

5th. If the ground where the hole was dug was the only *way* by which the plaintiff could reach the temporary market, or if the city authorities had set apart or indicated it as a way thereto, (of which however there was no proof,) the city would be liable for negligence, if any, in permitting the way to be obstructed by such a nuisance, but the fact that others used the same route does not make the city responsible to the plaintiff.

CROSS-APPEALS from the Superior Court of Baltimore City.

*Trespass on the case,* brought on the 26th of August 1854, by Brannan against the Mayor and City Council of Baltimore, to recover damages for injuries sustained by him, in falling into a hole, which had been dug in the limits of the Bel Air market.

The declaration in some of its counts alleges, that the plaintiff while lawfully passing along a certain public and common highway in the city of Baltimore, which was under the care and management of the defendants, through their servants, whose duty it was to keep the same free and clear from all obstructions and impediments, fell into a hole or pit, which the defendants, by their servants, unlawfully and through carelessness and negligence, permitted to be dug in said highway, and suffered to remain open and uncovered, whereby he was much injured. In other counts it alleges, that the plaintiff, while passing through and in the lawful use of a public market, to wit, the Bel-Air market, in said city, which was under the care and management of the defendants and their servant, the clerk of said market, whose duty it was, under the orders and ordinances of the defendants, to regulate said market free and clear from all obstructions and niusances, fell into a hole in said market, which the defendants and their said servant, in violation of their duty, negligently made and dug, and wilfully and knowingly permitted to remain open and unfilled, whereby he was much injured, &c. Plea, *non cul.*

*Exception.*—The facts of the case are sufficiently stated in the opinion of this court. The plaintiff asked the following instruction to the jury:

If the jury find from the evidence, that on the 8th of October 1853, the plaintiff, whilst in attendance upon the night market of the Bel-Air market, fell into the hole or opening, described by the witnesses, and that the existence of this hole or opening was known to the officers and agents of the defendant, or that they might, by care and diligence, have obtained notice of its existence, and that the same could have been filled up, and the danger therefrom removed or avoided, by the use of proper diligence on the part of the defendant, or its proper agents, and the same was not so filled up, then the plaintiff is entitled to recover such damages as the jury may find he sustained because of such injury, provided they shall further find, that the plaintiff, when he sustained said injury, was exercising ordinary care and diligence in his attendance upon said market, and shall further find that the plaintiff had

no other way by which to proceed to the temporary market, with safety, or that he pursued the path usually taken by persons going to this temporary market.

The defendants then asked the following instructions:

1st. That the city authorities have full power and authority to pull down and erect market houses, and to regulate markets, and are the exclusive judges of the time, place and manner, in which they shall be used by the public.

2nd. If the jury find from the evidence, that the corporate authorities of the city had directed or authorized the destruction of one of the old Bel–Air market houses, which had been accordingly demolished, and the materials thereof taken away, with a view to the erection of a new one in its place, and that in the mean time, and for the accommodation of the public, and until the new building should be completed, a temporary market was erected by the city, and that after the old market had been torn down and the temporary one put up, the plaintiff strayed into the place where the old building formerly stood, and, as stated in the evidence, fell into the hole, made by the foundation of an old pillar being dug away and removed, then he is not entitled to recover in this action.

3d. If the jury find from the evidence, that the hole mentioned therein, into which the plaintiff fell, might have been seen by an ordinary person and avoided, or if the jury find that it was shaded, either by the tables carried there by the country people, or by the materials deposited thereon by persons who had contracted with the city to put up a new market, from the light of the city lamps, so it could not be seen, then the plaintiff is not entitled to recover, although they may find from the evidence that the plaintiff fell into the hole and was injured.

The court (LEE, J.) granted all these prayers, and the defendants excepted to the granting of the plaintiff's prayer, and the plaintiff to the granting of those of the defendants. The verdict and judgment were in favor of the plaintiff for $500 damages, and both parties appealed.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*G. L. Dulany,* for the defendants, argued:

1st. That the city authorities had full power to establish and regulate markets, and to pull down old market houses and erect new ones, and to judge as to the time and manner in which they shall be used by the public; that while the old market was being demolished and the new one in course of erection, as stated in the evidence, the right of the public to use the site of the old market, as a place of loiter, or as a common thoroughfare, was suspended, and the plaintiff had no right to go within the limits of the old market to buy or sell, or use the same as a common highway, and consequently is not entitled to recover for the injury sustained by him, occasioned by his own default and disregard of the law and ordinances of the city. *Act of* 1796, *ch.* 68, *sec.* 9. *Ordinance No.* 16, *of the 4th of March* 1853, *and Resolution No.* 246, *of the* 10*th of September* 1853. *Angel & Ames on Corp., secs.* 31 to 36. 9 *Cranch,* 43, *Terrett, et al., vs. Taylor, et al.* 4 *Wheat.,* 636, *Dartmouth College Case.* 3 *Pet.,* 409, *Fowle vs. The Common Council of Alexandria.* 7 *Pet.,* 243, *Barron vs. Mayor & C. C. of Balto.* 17 *How.,* 167, *City of Providence vs. Clapp.* 20 *How.,* 135, *Smith vs. Corporation of Washington.* 7 *Mass.,* 169, *Riddle vs. Proprietors, &c.* 9 *Mass.,* 247, *Mower vs. Inhabitants of Leicester.* 4 *Pick.,* 414, *Merchants Bank vs. Cook.* 9 *Md. Rep.,* 109, *Owings vs. Jones.* 8 *Md. Rep.,* 101, *Mayor & C. C. of Balto. vs. Root.*

2nd. There was no evidence in the cause of negligence in the city or its officers, either in suffering the hole to be dug, or permitting it to remain unfilled at the time the plaintiff fell into it; nor is there any evidence that the plaintiff had no other way to the temporary market than that which led into this hole. It is, therefore, submitted, that the court erred in granting the plaintiff's prayer.

*A. L. Knott,* for the plaintiff, argued:

1st. That the Act of 1796, ch. 68, sec. 9, having conferred on the city of Baltimore the power and authority "to prevent and remove nuisances," as also "to erect and regulate markets,"

it was the duty of the city, by a rigorous exercise of its authority, either, 1st, to prevent persons from digging the hole in the market space, into which the plaintiff fell, as stated in the evidence, or, 2nd, to remove and abate the nuisance, on receiving notice of its existence, by filling up the hole in a proper manner, and adopting adequate and reasonable precautions to keep it filled up and prevent persons from re-opening it. The power and authority to prevent or remove nuisances carries with it the duty and obligation to prevent or remove them. 9 *Md. Rep.*, 174, *Mayor & C. C. of Balto. vs. Marriott. Rev. Ord. of Balto.*, 1850, *No.* 26, *secs.* 7, 9, 11, 18, 30, 40, 44, 49, 60.

2nd. That independently of the power and authority so conferred, and the consequent duty and obligation so imposed under the statute, it was the duty of the city, in its character as owner and proprietor of the Bel-Air market and market place, and of all the ground embraced within the limits of this market, as set forth in sec. 5, of Rev. Ord., No. 26—the *locus in quo* of the accident and injury—to exercise the same degree of care and diligence in making its improvements thereon that any private owner of property, whether a private corporation or a natural person, would be bound, under similar circumstances, to exercise; and for an injury occurring through its default or negligence, in this respect, or the default or negligence of its agents and servants, the city is responsible in the same manner, and to the same extent, that any private owner would be responsible;—the measure of the liability of the one is the measure of the liability of the other. 9 *Md. Rep.*, 174, *Mayor & C. C. of Balto. vs. Marriott.* 3 *Hill*, 531, *Bailey vs. Mayor & C. C. of New York;* and same case in 2 *Denio,* 433. 1 *Sandf. S. C. Rep.*, 226, *Delmonico vs. New York City.* 19 *Pick.*, 513, *Thayer vs. Boston.* 12 *Wheat.*, 40, *Clark vs. Corporation of Washington.* 22 *Penn. State Rep.*, 64, *City of Pittsburg vs. Grier. Ibid.*, 388, *Erie City vs. Schwingle..* 3 *Hill*, 612, *Mayor & C. C. of New York vs. Furze.* 1 *Brown's Ch. Cases*, 469, *Moodalay vs. East India Co.* 3 *Barn. & Adol.*, 77, *Mayor, &c. of Lyme Regis vs. Henley.*

3rd. The prayer of the plaintiff was properly granted. It embraced the whole law of the case, and is substantially the same as was granted and received the approbation of this court in *Mayor & C. C. of Balto. vs. Marriott.* The only questions for the jury to determine were, 1st, had the city, or its agents and servants, exercised proper and reasonable care and diligence in the prosecution of the work at the market, in taking down and removing the old building, so as to prevent the liability of accident, or in preventing or removing the particular nuisance complained of, to wit, the hole in the market space into which the plaintiff fell? and 2nd, was the plaintiff himself in the exercise of ordinary care at the time of the accident? These questions the plaintiff's prayer submitted to the jury and they passed upon them. In addition to the cases already cited, see, on this point, 4 *Hammond,* 500, *Goodloe vs. City of Cincinnati.*

The court erred in granting the defendants' prayers for the following reasons:

1st. The first is too vague and indefinite, and in the broad and general terms in which it was granted, was calculated to mislead the jury as to the responsibility of the city. It can be taken in two senses and is susceptible of two constructions. The "full power and authority" and "exclusive discretion," therein claimed for the city, may be taken to be that absolute, unlimited, and illimitable power and authority, and irresponsible discretion, which are the attributes of sovereignty and belong to it alone, and in the exercise of which the sovereign power is exempted from all liability for the consequences flowing from it; or it may be taken to be only that "full power and authority" and "exclusive discretion", which is conferred upon the city by the Act of 1796, in regard to the erection and regulation of markets, meaning thereby, that the city has power, authority and discretion, to the exclusion of every body else, qualified, however, by the respect it owes, in common with every other proprietor, to the safety of the lives, health and property of others, and the liability it is under for injury occurring through the negligence, default or unskillfulness of itself, or its agents and servants, in the actual exercise of such

30    v. 14.

power, authority and discretion.   If the prayer is to be taken in the former sense, it is clearly erroneous.   Power, authority and discretion, of that absolute and arbitrary species, cannot be predicated of this defendant.   It is not sovereign but subject. It is the creature of the sovereign power of the State.   It derives its being and all its rights, powers, privileges and faculties from the Act of incorporation,—from its charter granted by the State.   The State has made it a corporation—it can unmake it.   It has clothed it with certain specified powers—these it can alter, modify or take away.   Such a condition of subordination is incompatible with the idea of sovereignty in the city, and with the possession, on its part, of that species of absolute power and authority, and irresponsible discretion, which are the marks and attributes of sovereign power alone.   If it is to be taken in the latter qualified and conditional sense, the law of the prayer is not denied.   But that sense is not clear, and the court should have modified it so as to express the responsibility of the city for its wrongful acts, or those of its officers and servants, in the execution of the work at the market, or rejected it altogether, on the ground that it does not distinguish between the two classes of powers above referred to, and tended to mislead the jury.   3 *Comstock,* 463, *Rochester White Lead Co. vs. City of Rochester.*   3 *Barb.,* 254, *Brower vs. New York City.*   15 *New York Rep.,* 532, *People vs. Draper.*   1 *Selden,* 369, *Lloyd vs. New York City.*   2 *Kent,* 309, 321, and *note.*   17 *New York Rep.,* 104, *Storrs vs. City of Utica.*   16 *New York Rep.,* 160, *Conrad vs. Ithica.   Ibid.,* 171, *Weet vs. Brockport,* and cases already cited under preceding points.

  2nd.   The second prayer takes from the jury the whole question of care and diligence, and the degree of care and diligence, incumbent on the city in making the improvements at the market, and so far conflicts with the doctrine of the plaintiff's prayer granted by the court.   There is, besides, no evidence to support that part of it which refers to the plaintiff's straying into the market place, and leaving out that the prayer asserts, if it asserts any thing, the absolute non-liability of the city, under all and any circumstances.   It is only a particular

application, to the facts in this case, of the erroneous doctrine asserted in general and abstract terms in the first prayer, and is open to the same objections.

3rd. The third prayer errs in this, that it seeks to relieve the city from liability on account of the existence of one nuisance, by pleading the fact of the existence of another, to wit, the suffering and permitting, by the city and its officers, of hucksters and country people to invade and take possession of the space which was the site of the old market house, and had been marked out as the site of the new one, to set up their tables and sell their commodities thereon, and thus invite persons attending the market, as purchasers, into the space.   Under the Act of Assembly already quoted, full power and authority is conferred on the city, in regard to the regulation of markets.   By the Rev. Ord., No. 26, as well as by the special ordinance authorising the improvements in question, given in evidence, the city has proceeded to act under this power, and it is responsible for a complete and perfect execution of it.

Tuck, J., delivered the opinion of this court.

The case before us is, substantially, as follows:  Ordinances were passed by the defendants for rebuilding the Bel-Air market house, and for the erection of a temporary one for the accommodation of the public, until the new one should be completed. After the building had been taken down, and the temporary one put up, and in use as a market, a hole was dug within the limits of the old house by persons who had no business there, into which the plaintiff fell, during market hours, on the night of October 8th, 1853.   How this happened does not appear: the witnesses speak of him as in the hole when they first saw him.   That he was seriously injured is shown by the proof. The hole was about twenty feet from a flat outside the old market house, but within the space taken for the new one, where country people were accustomed to sell vegetables, and were selling at that time, against the orders of the market-master, who had warned them off.   At the time of the accident the contractors had taken down the old house, and by means of a plow, had indicated the outlines of the new one, which included

the flat, and placed along the furrow granite stones for the work, which, with lumber placed at the end next Gay street, about thirty feet from the hole, were intended to serve as obstructions to keep the people off. The temporary market had been put up and in use since the 12th of September.

We have no idea that this suit can be maintained, on the ground of negligence on the part of the defendants' agents in removing the old house. If that were the only proposition, it might be answered, that the owner or person in charge of property undergoing repairs, or being rebuilt, is not responsible for damage to one who voluntarily goes amidst the ruins, having no business there. He cannot ascribe to the supposed negligence of others, that which results from his own imprudence.

But it is contended that, by force of the charter—1796, ch. 68, sec. 9—it was the duty of the city authorities to prevent, and remove nuisances of this kind. It is true that, in the case of *The Mayor, &c., vs. Marriott,* 9 *Md. Rep.,* 160, it was decided, that the charter placed the Corporation of Baltimore, in this regard, upon the same footing which is held by individuals and private corporations; and as the defendants had authority "to erect and regulate markets," as well as to "prevent and remove nuisances," it would follow that they had assumed the duty, and the consequences of negligence in its performance, of keeping the established markets free from nuisances. This liability, however, could not be enforced where the party injured had not observed ordinary care and diligence; nor where he met his accident at a place, which, at the time, was not an authorized market place, or where buying and selling were carried on against public authority. When the old house was taken down the ground ceased to be a market place, and the fact of its removal, and the erection of a temporary house, indicated to the public that they could not go upon the old site to sell and buy, with the same privileges and indemnity, in respect thereto, as before the established market had been discontinued. The fact, that hucksters were selling on the flat, as formerly, cannot affect the question, because that would be allowing the plaintiff to protect himself against the consequences of his own act, under cover of the unauthorized acts of others.

But then it is claimed that the plaintiff was injured whilst passing over the old ground, towards the temporary market house. We do not perceive the right of the party to pass that way, except upon the hypothesis assumed in his prayer, "that he had no other way by which to proceed to the temporary market in safety." If this was the only way, or had been set apart by the city authorities as a passage way to the market, we think it should have been kept free from nuisances and obstructions, from which damage might result to persons whilst passing and repassing during market hours. But the circumstance that others were passing that way, does not render the city liable to the plaintiff; they were all there at their own peril, if there was no permission to use it for access to the temporary market, and none of them could set up any demand against the city, as for negligence, in respect to its condition as a public way.

According to these views, it follows, that the plaintiff's prayer was erroneously granted. It assumes the duty of the city to keep the hole filled up during market hours, when, as we have said, the ground had ceased to be a market place. It was also erroneous in this, that there was no evidence on the subject of care and diligence on the part of the plaintiff, or that he had no other way by which to proceed to the temporary market in safety, or that he pursued the same path usually taken by others. If the city authorities, or those having the market in charge, had indicated this as a way to the temporary market, the city would be chargable for negligence, if any, in permitting the way to be obstructed by nuisances of this kind, but there is no such evidence. The fact that others used the same route, did not make it a way in the sense that would impose on the city the duty of keeping it clear.

Upon the case, as presented by the evidence, we do not perceive that there is any cause of action against the city authorities. Municipal corporations are responsible, in many cases, for the manner in which the duties of their subordinates may be performed; but it would be extending the doctrine beyond the limits of reason and public policy, to enforce responsibility under the circumstances disclosed by this record. To

say the least, it was imprudent in the plaintiff to have ventured at night, over the site of a recently demolished market house, where he might reasonably have expected to find obstacles and hindrances, from which injury might result to others as well as himself; and where, he must be considered as having known that, the corporation had been doing nothing more than the charter and ordinances authorized, in reference to the erection and regulation of markets.

Having disposed of the case on the appeal of the defendants, it is unnecessary to consider the prayers granted at their instance, from which the plaintiff appealed.

*Judgment reversed.*